313 A.2d 656.

Ruth Coolbeth *et al. vs.* Aram K. Berberian *et al.*

JANUARY 2, 1974.

PRESENT: Roberts, C. J., Paolino. Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Ruth Coolbeth, a real estate tenant, brought this civil action in the Superior Court on her own behalf and on behalf of all Rhode Island tenants to enjoin allegedly unlawful self-help evictions. She named the following defendants: her landlords Richard and Betty Reprogle,

in their individual capacities and as representatives of all Rhode Island landlords; Aram K. Berberian, who, in addition to being a practicing attorney, conducts an eviction service business under his own name and as Landlord Eviction Service; and certain other designated individuals who are Berberian's agents and assist him in self-help evictions.

Thus, the plaintiffs are (1) an individual tenant, and (2) a class of tenants represented by that individual; the defendants are (1) two individual landlords, (2) a class of landlords represented by those two individuals, and (3) a group, but not a class, of individuals hired by the other defendants to evict tenants by self-help and without benefit of judgments for possession or writs of execution. Mathematically, this yields six causes of action. Some are class actions; some are not. To designate this as a class action would, therefore, be inaccurate.

The case was heard by a trial justice sitting without a jury, and at the conclusion of two days of hearing, Berberian, his agents and employees were temporarily restrained and enjoined

"* * * from conducting, supervising or participating in any capacity whatsoever in the eviction of any tenant or any person claiming possession as a tenant or any person holding or claiming to hold under a tenant except pursuant to a valid writ of execution issued to a sheriff as required by G. L. 1956 §34-18-9 and they are further enjoined from counseling, advising, or encouraging in any manner whatsoever any landlord or reversioner or their agents in any manner whatever to evict any member of the class herein except by the procedures authorized under G. L. 1956 §34-18-9 (1970 Supp.)."

Only Berberian has appealed.

The facts are not in dispute. Coolbeth is a month-to-month tenant of a duplex apartment which is owned by the Reprogles and located in Johnston, Rhode Island. In June of 1971 her apartment lacked either a back door or

screens, and its water supply had become contaminated causing her entire family to become ill. Complaints to the Reprogles, instead of resulting in the correction of the deficiencies, produced only a threat that unless the rent were paid she and her family would be dispossessed, forcibly if necessary and without resort to legal process.

Coolbeth thereupon consulted an attorney who contacted Berberian concerning the threatened eviction. He acknowledged that the Reprogles had made good their threat to seek his aid in effecting the ouster, and he said that Coolbeth's eviction would follow "[a]s soon as I received the money."

This action was then brought to enjoin the threatened self-help eviction on the ground that it violated the statutory scheme embodied in P. L. 1970, ch. 7.[1]

The hearing on plaintiffs' prayer for a preliminary injunction commenced on July 26, 1971. While Berberian was then present in court and acting as his own counsel, he did not object to any of the evidence offered by plaintiffs, cross-examine their witnesses or offer any of his own. Neither did he contest the trial justice's sua sponte consolidation of several actions filed by evicted tenants to recover damages from Berberian for unlawful force allegedly used in dispossessing them; nor did he advise the

---

[1]Public Laws 1970, ch. 7:

(1) added G. L. 1956 (1969 Reenactment) §34-18-17, which reads as follows:

"The right of a landlord or a reversioner to utilize 'self help,' so called, whether pursuant to the common law or pursuant to any agreement in writing or by parol, to reenter and repossess himself of land, buildings or parts of buildings leased upon non-payment of rent is prohibited."

(2) repealed §34-18-8, the right of a landlord under certain circumstances to reenter and repossess premises upon nonpayment of rent.

(3) amended §34-18-9 so that a landlord in order to recover possession after nonpayment of rent, shall institute a trespass and ejectment action. It further provides that executions are to be issued only to a sheriff.

trial justice or opposing counsel that he had that very morning filed a motion to dismiss on jurisdictional grounds and that he had noticed that motion for a hearing to September 14, 1971, about a month and a half in the future.[2]

At the close of the court on the 26th the case was recessed until 9:30 a.m. the following day. When that time arrived two events of significance had occurred. One was Berberian's disappearance from the scene, and the trial justice's concomitant discovery of the existence of the motion to dismiss which Berberian had filed the previous day; the other was the trial justice's announcement that an out-of-court conference appeared to have brought the Reprogles and Coolbeth close to a "settlement" of their differences.

While both of these events raise questions peripheral to whether the injunction should have issued, we consider them at the outset. We start with Berberian's contention that it was error for the trial justice to summarily dismiss his jurisdictional challenge without first notifying him that the hearing date thereon had been accelerated from September 14 to July 27.

That contention, as we understand it, is a narrow one. Berberian is not questioning the trial justice's authority to advance the hearing date on the motion or to grant preliminary injunctive relief without first disposing of the threshold jurisdictional defenses. *See* 1 Kent, *R. I. Civ. Prac.* §12.14 (1969); *United States* v. *Lynd,* 301 F.2d 818 (5th Cir.), *cert. denied,* 371 U. S. 893, 83 S.Ct. 187, 9 L.Ed. 2d 125 (1962). Instead, his only concern is that the trial

---

[2]The grounds of his motion were that (1) he had been served with a writ of summons addressed to Richard and Betty Reprogle; and (2) the writ with which he was served "* * * was endorsed by Rhode Island Legal Services Inc. which is not authorized to practice law in the state of Rhode Island."

justice, by failing to give him notice of the advancement of the hearing date on the motion, deprived him of an opportunity to be heard on the very vital question of whether the court had jurisdiction over his person.

Unfortunately, the record does not disclose why the trial justice considered and passed upon the motion without notifying Berberian. Understandably, he was perhaps impatient with Berberian not only for his delay in filing the motion until the day the case was reached for hearing on preliminary injunction, but also for his failure to advise the court of its pendency and for his unexplained absence on the second and final day of the hearing. It was these circumstances which perhaps persuaded the trial justice that Berberian had waived his right to notice of the advancement of the hearing date on the motion.

Whether the trial justice was justified in so concluding, we need not decide. Rather, it seems to us that the interests of justice will not be disserved if prior to the full hearing on the merits Berberian is given a *further* opportunity to present his jurisdictional challenge. Far better that it be disposed of then, than raised collaterally at a subsequent time.

Accordingly, and solely for the reason indicated, the trial justice's summary dismissal of the jurisdictional challenge is overruled pro forma.

The other peripheral matter relates, as we have already observed, to the trial justice's allusion to a possible settlement of the differences between Coolbeth and the Reprogles. Berberian refers to that possibility as a "settlement" of Coolbeth's cause of action, and argues that the "settlement," having occurred prior to the July 29th entry of the preliminary injunction, left the complaint pending as to him without a nominal plaintiff to prosecute it on behalf of the plaintiff-class. Consequently, he contends, the trial justice should have dismissed the action.

There are at least two short answers to that contention. One is that the case was not in fact "settled" prior to the issuance of the preliminary injunction. True, counsel for Coolbeth and the Reprogles were talking "settlement," and when the trial justice announced his decision on July 27 it might have appeared likely that one was in the offing, but nothing in the record indicates that it was achieved until August 4, 1971 when an order was entered dismissing with prejudice Coolbeth's complaint against the Reprogles. That "settlement" postdated the July 29th preliminary injunction and could not therefore serve as a ground for Berberian's appeal from that injunction.

The other answer presupposes the correctness of Berberian's assertion that the "settlement" occurred *prior to* trial. But if that were so, he should have brought the issue he now urges to the trial justice's attention and obtained a ruling thereon. That was a prerequisite to appellate review. *Ruggieri* v. *Ventalume Window & Door Products, Inc.*, 108 R. I. 514, 515-16, 277 A.2d 296, 297 (1971).

Having disposed of these ancillary matters we turn now to the substantive question of whether the trial justice erred in granting a preliminary injunction. We do so bearing in mind what this court has repeatedly said: the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered. An application for such temporary injunctive relief is, of course, addressed to a trial justice's sound discretion which should not be exercised unless the applicant has at least made out a prima facie case. And on review we will not fault the exercise of his discretion con-

cerning the injunctive relief unless it is reasonably clear that it has been illegally exercised.[3]

Here the factual findings upon which the trial justice based the preliminary injunction were that when the action was filed Coolbeth was threatened with self-help eviction by Berberian; that she fairly and adequately represented all members of the proposed class; that defendant Berberian, his employees and agents had in the past engaged in the practice of counseling, aiding, abetting and conducting self-help evictions; and that there was a substantial threat and likelihood that they would in the future attempt to evict members of the plaintiff-class by "self-help" and thereby irreparably injure them.

Berberian does not seriously suggest that the trial justice erred in the performance of his fact-finding function,[4] but argues that the statutory scheme barring self-help evictions applies only to landlords and reversioners and not to independent entrepreneurs like himself. Hence, he says, this case does not fall within the purview of that scheme and he concludes that plaintiffs, even accepting the facts as found by the trial justice, failed to establish a prima facie case entitling them to injunctive relief.

In urging this view, Berberian is asking us in effect to pass on the merits of the controversy. But this court ordinarily will not delve into the merits on an appeal from

---

[3]These well-established principles, either in their entirety or in part, are set out in a long line of cases including *Studley Land Co.* v. *Myers*, 81 R. I. 426, 103 A.2d 924 (1954); *McGee* v. *Local 682, Bhd. of Painters*, 69 R. I. 1, 30 A.2d 461 (1943); *Miller* v. *Tanenbaum*, 61 R. I. 92, 200 A. 449 (1938); *Smart* v. *Boston Wire Stitcher Co.*, 50 R. I. 409, 148 A. 803 (1930); *Blackstone Hall Co.* v. *Rhode Island Hospital Trust Co.*, 39 R. I. 69, 97 A. 484 (1916); *Armour* v. *Hall*, 38 R. I. 300, 95 A. 442 (1915).

[4]The record does not support Berberian's argument that only one of the consolidated cases arose subsequent to the enactment of the anti-self-help law and he does not otherwise challenge the trial justice's factual conclusions.

a preliminary injunction, particularly if, as in this case, the pleadings were not closed when the matter was heard below. *Studley Land Co.* v. *Myers,* 81 R. I. 426, 430, 103 A.2d 924, 926 (1954); *American Electrical Works* v. *Varley Duplex Magnet Co.,* 26 R. I. 440, 59 A. 110 (1904).[5] Instead, we will limit our inquiry to whether the plaintiffs have shown at least a reasonable probability, rather than a certainty, of ultimate success on a final hearing. *Fordson Coal Co.* v. *Maggard,* 2 F.2d 708 (6th Cir. 1924); *see Palmigiano* v. *Travisono,* 317 F. Supp. 776, 787 (D.R.I. 1970).

Here we have a statutory scheme which, although we do not now pass final judgment on it, appears sufficiently comprehensive on its face to prohibit *all* self-help evictions. We also have a finding by the trial justice that Berberian has conducted, and will in the future conduct, such evictions to the damage of the class of tenants. Thus they will be illegally, and perhaps forcibly, deprived of their tenancies with possible resulting injuries to their persons or property. In light of that record the trial justice, in our judgment, was justified in assuming equity jurisdiction in order to prevent continuing and repeated trespasses. *New-*

---

[5]We have, however, said:

"It is the duty of the court when the equity of the bill is questioned, even on appeal from a preliminary injunction, to determine that question so that if there be lack of equity the complainant may not be left to pursue a remedy which he must ultimately be denied. Chief Justice Taft, in *North Carolina R. R. Co.* v. *Story,* 268 U. S. 288, said: 'By the ordinary practice in equity as administered in England and this country an appellate court has the power on appeal from a temporary or interlocutory order or decree to examine the merits of the case if sufficiently shown by the pleadings and the record and, upon deciding them in favor of the defendant, to dismiss the bill and save both parties the needless expense of further prosecution of the suit.' " *Smart* v. *Boston Wire Stitcher Co.,* 50 R. I. 409, 415-16, 148 A. 803, 805 (1930).

*port Yacht Club, Inc.* v. *Deomatares,* 93 R. I. 60, 64, 171 A.2d 78, 80 (1961).

Except to the extent otherwise indicated, the defendant Berberian's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings consistent herewith.

*John M. Roney,* Rhode Island Legal Services, Inc., *Barry Vogel,* Boston, Mass., for plaintiffs.

*Aram K. Berberian,* pro se, for defendants.